May it please the Court, I am Francis Geyer from the law firm of Anne Yancey Housman. I represent the petitioner Noel Vilma Romero. Your Honors, I'd like to reserve five minutes for rebuttal. Granted. This is a case, Your Honors, dealing with the fundamental unfairness of the Board upholding the IJ's findings that stripped Mr. Romero of his lawful permanent resident status and rendered him unable to even apply for any discretionary relief before the Court, despite the fact that Mr. Romero has been living in the United States for 25 years, has two United States citizen children and a United States citizen spouse. If this matter were remanded, is there any way that Mr. Romero can prevail? Is there any way that he can obtain a 212C waiver? Yes, Your Honor. Mr. Romero can, if the Court finds what we argued, agrees with our argument in the brief, which is that the Board's upholding of the IJ's finding that Mr. Romero made a willful misrepresentation at the time of his adjustment and therefore was lawfully admitted for permanent residence, he would enjoy the right to apply for 212C. In addition, if the Court agrees with our other argument, which is that the INA 246A statute prohibits the Department of Homeland Security from charging him with having misrepresented his criminal history at the time of his adjustment, There's nothing in this record that indicates he entered into a plea agreement or he declined a plea agreement and went to trial or something like that, is there? No, Your Honor. There's nothing that's going to show, if it is remanded, that he has a clear shot at 212 relief? No, Your Honor. That was not, as far as I'm aware, that's not in the record. So first things first, we have to decide whether or not he obtained his initial, whether he actually misrepresented it live when he made his application. On his adjustment application, yes. And we submit. If he loses on that, he really has no relief, aside from he has nothing available to him. Well, Your Honor, we petitioner argues that even if Mr. Romero, even if there is a finding that the judges in the outboards holding that he misrepresented his status or his criminal history at the time he applied for adjustment, even if the Court finds that supported by substantial evidence, petitioner submits that this Court's holdings in Bamadili and Garcia still prohibit him from being stripped of his lawful permanent residence because Have you raised that issue previously? Did you raise the Garcia-Bamadili issue below the BIA? Your Honor, the BIA was handled by a prior counsel who did not submit a brief. Yes. No, Your Honor. So it's unexhausted. That's unexhausted. Well, I believe the Garcia decision came down after, slightly after the Board's decision. But Bamadili was not raised, Your Honor. Well, then it's not before us. We can't even entertain it. Well, Your Honor, I would still argue that there is a fundamental fairness question that the Court does still entertain jurisdiction to address here because part of our argument is, with regard to Bamadili and Garcia, is that fundamental fairness. Well, you could say that on any case where there's an issue unexhausted before the Court of Appeals, that fairness would require us to consider it. But I'm aware of nothing in this Court that allows us to consider something that hasn't been before the BIA. Well, the only thing is, Your Honor, is that the Garcia decision did come down after Bamadili. So because after Congress amended the statute in 1996, it was unclear the status of Bamadili. Perhaps that's why it wasn't raised at the time. Well, there may be good reasons, but that would make any difference as far as our jurisdiction of it being unexhausted. Well, in any case, Your Honor, the Court still retains jurisdiction to whether the Board's determination that the IJ correctly held that Mr. Romero misrepresented his status is supported by substantial evidence. And we would — Why don't we get down to the nitty-gritty of it then? Did he misrepresent it? Your Honor, the record does not contain sufficient — substantial evidence that Mr. Romero willfully and knowingly misrepresented his status at the time of his adjustment. But you don't deny that what was in the application was false? The — He signed it? Yes, he did, Your Honor. So the whole issue turns on willfulness? Yes, and whether the Department of Homeland Security has satisfied its burden of demonstrating that he willfully misrepresented his status and his criminal history. And Petitioner submits — And what is that burden of proof? Clear and convincing evidence? Substantial evidence, Your Honor. No, that's a standard of review. Yes, clear and convincing. I mean, this is effectively something that sounds in fraud. And I think, in fact, the IJ referred to a determination that she made having been made by clear and convincing evidence, which is a higher hurdle for the government to have to reach. Yes, Your Honor. And an examination of the record demonstrates that Mr. Romero testified credibly that he did not speak English. He was not a very well-educated man or sophisticated individual. He relied on the services of a notary to complete his application. Did he bring that notary — you know, looking at this case, I'm just thinking what I would do as a lawyer. Did he bring that notary or secretary, whatever she was, to court to verify his story that she never asked him or she — or whatever it is? Did he shore up his credibility by showing that he never lied? It seems that any lawyer would have done something along that nature. No, Your Honor, he did not. Well, the application says who helped him fill it out, does it not? I believe it does, Your Honor. In fact, he says he filled it out. Rather, the form shows his signature indicating that he filled it out, doesn't it? Yes. Yes, Your Honor. He did this pro se, didn't he? The adjustment application was — well, with the help of a notary, but not with an attorney, Your Honor. But who — how about what the application says as to a scrivener or someone that helped him fill it out? I don't believe there's any signature there. That came up in his testimony, Your Honor. What happens to our ability to review the BIA if anyone can say after the fact that, look, it was false, but I did lie, someone who I had do it for me lied or never asked me, and therefore I didn't misrepresent anything? What happens to our ability to resolve these matters? Well, Your Honor, then I believe it turns to the — then it was the INS, now USCIS, to present some — to meet their burden and present perhaps the case officer who adjudicated the application to establish that Mr. Romero was asked these questions, or to bring even perhaps the copy of the I-485 and showing that the normal procedure where the case officer fills in and signs and checks off to indicate that the petitioner answered each question. But doesn't the application do that on its face? The application asks the question, but the normal procedure, as I understand it, is that the case officers must ask each question on the application to verify the accuracy of the information. I'm talking about when he filled it out with the secretary. Yes, it does. On its face, does that prove that he lied? So is it up to him to show that he didn't lie? I believe it's up to the Department of Homeland Security to establish that he willfully misrepresented his — Mr. Geyer, your position, as I understand it, is that there is not substantial evidence to support the IJ's determination of willful misrepresentation. Is that right? Yes, Your Honor. So why was it wrong for the IJ, who had before her both the 751 and the 485, to determine that, in fact, there was willful misrepresentation, when the 751, as Judge Cowan and I have mentioned, includes a signature to the effect that Mr. Romero prepared the petition when he testified that someone else did so, and the 485 has a blank, no signature, under Part V with respect to who prepared the application when his testimony indicates that he had the assistance in preparing the application of Ms. Rodas? Why isn't that enough? Why wasn't that enough for the IJ? Well, Your Honor, the IJ's opinion — It's at least pretty inconsistent, isn't it? Yes, Your Honor. It's more than inconsistent. Isn't it even a false swearing? He had a sign that said under oath, did he not? Yes, Your Honor. And his statements now are at loggerheads with what the applications actually set forth. Yes, Judge. But the judge's decision really seemed to place a lot of weight on the fact that it appeared from the testimony that Mr. Romero did not fully disclose his criminal convictions to his spouse, and therefore that, for the judge, seemed to satisfy the willful standard. And the inference that the judge made that because Mr. Romero did not disclose his criminal conviction to his spouse, that therefore he made a willful misrepresentation to the Immigration Service is really speculative. Well, isn't the fact that he's saying his wife testified, she even said she didn't know about these convictions, correct? She didn't know about most of them. Is that what she said? No. She testified she didn't know about them. She said she knew about drinking. Drinking. Yes, Your Honor. Well, unless you're a teetotaler, that's not an offense yet. She testified she did not know about these convictions. Yes, Your Honor. If that's her testimony to be believed, wouldn't it be logical to then, because she had to co-sign his application, that he lied when he set forth nothing on the application? Because if he put something down there, she, who had to co-sign, would have said, gee, you've been lying to me all these years. Your Honor, I would just submit that there is a difference between not being fully candidate with one's spouse and making a willful knowing misrepresentation to a government agency. If judges are going to find that every petitioner who wasn't completely candid with their spouse about their past is guilty of some kind of knowing misrepresentation to the service, I think that would not be an appropriate standard. All right. We'll have you back, Mr. Guy. You have reserved five minutes, in fact, for rebuttals. Thank you. Ms. Parascandola. May it please the Court, Christina Parascandola for the Attorney General. Remanding this case to the Board would be futile because there is no relief from removability that the Board can grant, Mr. Romero. Ms. Parascandola, let me, I want to get to one point that was raised. By the other judges on the panel here. In your brief, you did not raise the fact that Mr. Romero waived the argument on Garcia and Bambadeli. Bambadeli. You didn't raise that, did you? In our brief, that's correct. Initially, I moved to dismiss the case because I thought that, I mean, it looked as if Petitioner didn't raise the issue below. It's a gray area. One could see where they did raise it. There is a section in the transcript before the immigration judge. It's on page 165, where the immigration judge did consider Bambadeli, which was this Court issued in 1996. But, in fact, in your brief, I think on page 17, you, in effect, concede that Mr. Romero is not removable on the misrepresentation grounds because of Garcia. Your Honor, I don't believe that we conceded that. Actually, I would argue that he is removable on all four grounds. I mean, the essence of your brief is that, notwithstanding the misrepresentation, he's removable on the other two grounds. That's correct, Your Honor. When faced with Garcia. I mean, when faced with Garcia, it appears to me that you made the choice to argue that, okay, the misrepresentation is a problem for us. But, in fact, he is removable on the other two grounds. The world turpitude and the conviction. Your Honor, we cite to Bambadeli, and the language in Bambadeli is very careful, that the statute of limitations bar, which is from section 246 of the act, which applies to the rescission of a grant of lawful permanent residence status. That also applies as a statute of limitations in bringing a charge of removability for fraud or willful misrepresentation in the absence of the commission of any other offense. And that's the key phrase here, which is on page 17 of our brief. Here, there are other offenses, as they're very clear in the record. So, actually, all four charges of removability should be sustained here. Well, you don't have to reach the others. Yes, Your Honor. That's correct. We don't have to reach them. The application, if he wasn't admitted in the first place. That's correct. And so that's why we would ask for the court to either dismiss this case for mootness or to affirm all four findings of removability. Well, the only thing, as Judge Fischer has mentioned, and as we mentioned to your friend across the aisle, his position as to part of his argument is unexhausted, the BIA. But didn't you waive the unexhausted by never testing it? Your Honor, well, exhaustion in this court is jurisdictional, so it's really not something that can be waived by a party. Well, no, I think exhaustion is not jurisdictional, as I understand it. Under the Immigration and Nationality Act, which just applies to immigration cases, there is a mandatory exhaustion requirement. You never raised that. We didn't raise it. That's correct. But isn't it waived? Isn't the problem we have here that in light of Garcia, and this case seems to me now to be all about Garcia, like it or not, like Garcia or not, that we need to remand this to the IJ to evaluate this case in light of Garcia? No, Your Honor, because even if the immigration judge were to look at the government's spring of removability charges under the fraud and misrepresentation ground, there still would be no relief available. Well, if he was a lawful permanent resident, couldn't he then apply for waiver? Your Honor, there is no waiver available for an alien or for a lawful permanent resident who is convicted of a controlled substance offense. It's just it's not in the statute. Congress made a decision that there's no waiver of inadmissibility for that. If there are no further questions, again, I would ask that the Court either dismiss the case or affirm all four findings of removability. You said you made a motion to dismiss. Yes. Before this Court? Yes, before this Court, based on mootness, because there's no relief that an immigration judge would be able to grant Mr. Romero. You raised it effectively as a jurisdictional question. Yeah, you raised it as a jurisdictional question. Yes, and, Your Honor, this was before we received Petitioner's, Mr. Romero's brief arguing Garcia. But you raised it on the basis that there was no relief possible, that this case was moot. Yes. Okay. But that was before Garcia. Your Honor, this Court issued the Garcia decision one month after the Board's decision in this case. So, yes, Garcia had been issued before this. However, the Petitioner had not raised it below or Bamadili, which Garcia relies upon. And you didn't raise it in your motion to dismiss? Correct. Okay. So I go back to my original point. It seems to me that this case is all about Garcia right now, is that we have Garcia. Yes. That applies 246 to this case. Your Honor, if I understand correctly, the issue here is whether Garcia imposes a statute of limitations on the government to bring a charge of removability under the fraud and willful misrepresentation ground. And it does not because, in this case, the Petitioner was charged with removability and found removable under other grounds. Well, your basic position is if he was correctly found as invisible and removable in the first place, we don't have to reach anything else. That was our initial position when I moved to dismiss. You don't have to reach these other issues that you raised. No. They made a correct determination that he lied on his application and he was then invisible. Yes. And I would also, to respond to Mr. Romero's argument, the finding that he willfully misrepresented information to gain an immigration benefit is something this Court refused for substantial evidence. And here we have the form that he completed in 1996 and 1998. And he went to an interview with an INS officer who, as my opposing counsel stated, went through each question point by point. And when asked, were you ever convicted or arrested or anything like that, the Petitioner said no. So that finding is supported by substantial evidence. Thank you. Thank you. Do I have a rebuttal? Yes. Your Honor, as you stated, Garcia, the holding of the court in Garcia is crucial to the adjudication of this case. The Petitioner's contention is that Garcia prohibits the DHS from alleging fraudulent obtaining the adjustment of status when the five-year statute of limitations has expired. And Mr. Romero was issued a notice to appear in February 2006 when he received his adjustment notice in 1996. So that was well after the expiration of the five-year statute. There's nothing in the statute itself on the face of it that says that the statute doesn't apply in a case where there are multiple grounds of removability. And also in Bamadili, the Court really in focus in addressing the statute and whether it should apply to deportation, the Court really focused on issues like the settled expectations of the alien, having lawful permanent residence after years and years of presuming that they had that status, of the disruption of taking the alien and removing him from a country he's been in, in his case, for 25 years. I think it was 15 years in Bamadili. And all of those fundamental fairness issues. And the petitioner submits that fundamental fairness and the Court's holding in Garcia mandates that the Department of Homeland Security cannot charge Mr. Romero with having fraudulently obtained his adjustment when the five years has expired. He may be charged with controlled substance violation and the CIMT violation. However, because Mr. Romero retains his lawful permanent residence status, he is eligible for discretionary relief. And that's all we're asking for in this case, for a chance to have a person who has 25 years in this country, who had a United States citizen wife and children, to be given just a minimal opportunity to have a... What about counsel's argument that because of the conviction, you can't ask for waiver or cancellation of removal? Your Honor, Mr. Romero's most serious conviction is controlled substance conviction with a third degree cocaine possession. He would retain the right for 212C relief because it was before 1997 when Ira kicked in. And 212 does allow waiving controlled substance offense. But that conviction was in 1989, and he was only here from 85 to 89, which meant he didn't have the requisite number of years. Yes, Your Honor, but if you accept our argument that DHS is prohibited from charging him with not having legal permanent residence status, then he had achieved the requisite seven years of lawful permanent residence status at the time the NTA was issued in February 2006. Mr. Connolly, if we agree that the IJ's decision finding that the petitioner was inadmissible and removable for the United States as an alien, because he willfully represented material facts on his application, do we... We don't have to reach any of these other questions, do we? I would disagree, Your Honor, because I would still submit that in the case of Garcia and Bamadili, there were two admitted misrepresentations, admitted fraud. Everybody agreed in Bamadili it was a fraudulent marriage. Yeah, but that's if you reach Garcia, if you reach them. But do you reach the theory of those cases if you first find, as a matter of fact, that he lied and he wouldn't have been admitted in the first place if he would have told the truth when he was originally admitted? I submit that you do, Your Honor, because in spite of whatever fraud that went on, assuming that there was fraud, assuming at the time of admission, then we still have the five-year bar at 246A. Even if the government proves that he received that initial admission through fraud and willful conduct? Yes, Your Honor, because as I stated, they proved that. Everybody admitted that in Bamadili, and I believe in Garcia in both cases. And there was not even in Bamadili and Garcia, there was not even a family relationship to justify getting permanent residence. Bamadili had a fraudulent marriage. Garcia was petitioned for by her aunt, who she had claimed to be her mother, wasn't an immediate relative, really had no right to receive status. Whereas here, there's no question that Mr. Romero at least had the underlying family relationship that enabled him to seek adjustment of status. He had a bona fide marriage and two U.S. citizen children. The other cases did not deal with false original admittance to the country, though? They dealt with, yeah, they dealt with, Your Honor, they dealt with false statements at the time of the adjustment. Yeah, but not with the fact that he shouldn't have been admitted in the first place. No, Your Honor. All right. There are no further questions? Thank you. Thank you, Mr. Guyer. Thank you, both of counsel, the panel. We'll take the case under advisement.